# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERTHA VAZQUEZ FAJARDO, et al.,<br><br>　　　　　　　Plaintiffs,<br>　vs.<br><br>UNITED STATES DEPARTMENT OF STATE, et al.,<br><br>　　　　　　　Defendants. | CASE NO. 16cv2980-LAB (MDD)<br><br>**ORDER GRANTING PETITION TO CERTIFY THAT AGENT RICO WAS ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT** |

　　　After the Attorney General refused to certify that Agent Marco Rico was acting within the scope of his employment, so as to bring the claims in this case within the Federal Tort Claims Act (FTCA), Rico filed a petition for certification under 28 U.S.C. § 2679(d)(3). The government filed an opposition, and the Court held argument, at which Rico, the government, and Plaintiffs appeared through counsel. Plaintiffs did not file an opposition, but agreed with the Court's tentative conclusion that Rico was acting within the scope of his employment. Based on undisputed evidence included in the briefing, and concessions during argument, the Court concludes that no evidentiary hearing is necessary.

　　　This order supplements the facts and legal arguments discussed at the hearing. While it relies on and repeats some of those facts and arguments, it is not intended as a complete memorialization of the hearing. The Court's ruling is based on the briefing, the hearing, and its analysis in this order.

**Factual Background**

The following is a general factual background, taken primarily from the government's opposition. Besides these facts, the Court relies on undisputed facts and evidence included with the briefing or discussed at the hearing.

Rico is a special agent for the State Department. Rico and another officer were sent to Plaintiff Bertha Vazquez Fajardo's home as part of an investigation of a fraudulent passport application in Texas by a third party. During the investigation, agents learned that Fajardo was present in the United States illegally. Fajardo was told by ICE agents that she would likely be deported within a week. Rico gave her his business card and asked her to call if she had any more information about the passport information. Fajardo called him and left a voicemail. He then called her, but when she did not answer, he sent a text using his government cell phone. This turned into a long series of texts that, among other things, suggested he had sexual intentions toward her and would be willing to help with her immigration problem in return for sexual favors from her.

Eventually, on November 7, 2014, he came to her home by himself, contrary to his office's policy. What happened there is disputed. She alleges he exposed himself and assaulted her. He says she talked with him about her immigration problems and tried to reassure her without promising to do anything other than "make calls." After this, he left.

Rico was investigated and admitted some of what Fajardo alleges. For example, he admitted texting her, though he said her texts to him had been deleted, so as to create the appearance that he was flirting with her rather than she with him. He also admits going alone to her home, contrary to his office's policy. At the hearing, the government confirmed that he is still employed with the department.

**Discussion**

Rico bears the burden of presenting evidence and disproving the Attorney General's decision by a preponderance of the evidence. *See Kashin v. Kent*, 457 F.3d 1033, 1036 (9th Cir. 2006); *Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993). But review of the decision is *de novo*. *Meridian Int'l Logistics, Inc. v. United States*, 939 F.2d 740, 745 (9th Cir. 1991). Here,

there is no important dispute about the facts; the real dispute is about what the legal standard is, and how to apply it to the facts.

The FTCA provides that the United States can be liable to the same extent as a private person would. When deciding whether a federal officer was acting within the scope of his employment, the Court looks to *respondeat superior principles* that would govern private entities, not public entities. *See United States v. Olson*, 546 U.S. 43, 46 (2005). But the Court may consider decisions dealing with public entities too, provided the policies are equally applicable to private parties. *See Dugard v. United States*, 835 F.3d 915, 920 (9th Cir. 2016); *Xue Lu v. Powell*, 621 F.3d 944, 947 (9th Cir. 2010).

The leading California cases support the government's position. For example, *Lisa M. v. Henry Newhall Mem'l Hosp*., 12 Cal.4th 291, 299 (1995), dealt with a case where a hospital's ultrasound technician sexually molested a patient under the pretext of carrying out an ultrasound exam. The California Supreme Court evaluated whether the intentional tort was "engendered" by the employment, or whether it was "a generally foreseeable consequence" of the employer's enterprise. *Id*. at 300–01. Importantly, *Lisa M*. provided a rule for intentional sexual torts: "a sexual tort will not be considered engendered by the employment unless its motivating emotions were fairly attributable to work-related events or conditions." *Id*. at 301. In that case, although the nature of the technician's job gave him an opportunity to commit the tort, "his motivating emotions were not causally attributable to his employment." Id. The court also analyzed the tort in terms of foreseeability. A tort would be foreseeable if the employment "predictably [created] the risk that employees would commit torts of the type for which liability is sought." *Id*. at 302. The principles set forth in the California Supreme Court's decision appear to lead to the conclusion that Rico was not acting within the scope of his employment.

But for the Ninth Circuit's holding in *Xue Lu v. Powell*, 621 F.3d 944 (9th Cir. 2010), this would be an easy issue. *Xue Lu*, which was a split decision, interprets and applies *Lisa M.* to a case that appears to be analogous to this one.

/ / /

In that case, a federal asylum officer solicited bribes from two asylum-seekers, and sexually assaulted them. In the case of one plaintiff, Lu, the officer interviewed her, then about a week later arranged to come to her apartment. He solicited a bribe, then attempted to unzip and remove her pants. When she rebuffed him, he told her that her asylum application would be denied. The same officer committed similar acts against a second asylum seeker, Hao — this time, actually touching her in a sexual manner.

The majority did not rely on the plaintiffs' particular vulnerability or the fact that the officer's job gave him access to them or power over them. It cited three policy considerations for respondeat superior liability: "(1) to increase the vigilance and precautions of the employer; (2) to insure compensation for the injury; and (3) to spread the risk of loss." *Xue Lu* at 949 (citing *Lisa M.* at 510). The panel also relied on a case cited in *Lisa M.*, *Inter Mountain Mortgage, Inc. v. Sulimen*, 78 Cal. App.4th 1434 (2006), and compared the officer's actions to those of a loan broker in *Inter Mountain*. Because the abuse of power of both the loan broker and the asylum officer were foreseeable, the panel held, the officer was acting within the scope of his employment. *Xue Lu* at 949.

The majority's reasoning is not particularly detailed, but there does not appear to be any principled basis on which to distinguish *Xue Lu* from this case. The government urges the Court to read *Xue Lu* as dealing with retaliation (denial of the asylum request), rather than assault. This reading, however, ignores one of the two causes of action. Besides a claim for interference with the plaintiffs' civil rights (arising from the agent's handling of the plaintiffs' asylum claims), the opinion <u>also</u> held that the emotional distress claim should go forward. *Id.* at 950. These claims arose in the course of the attempted assault. *Id.* ("The emotional distress suffered as a result of the demand for sexual favors is an injury distinct from the battery and may be proved by the plaintiffs.")

It is true that the United States was immune for the assaults or batteries themselves, under 28 U.S.C. § 2680(h). *Xue Lu* at 950. But the issue of immunity (as in this case) is reached only <u>after</u> the United States is substituted in as defendant, which in turn depends on the employee having acted within the scope of his employment. Claims for assault or

battery can, of course, be maintained against federal employees for acts not within the scope of their employment, just as they can against anyone else.

It is also noteworthy that the reading the government urges was apparently not that of Judge Bybee, the dissenter in *Xue Lu*. Judge Bybee said he would have held that when the agent solicited money and sex from the plaintiffs in exchange for approval of Lu's asylum request, he was not acting within the scope of his employment. *Xue Lu*, 621 F.3d at 951. His extended discussion makes clear he understood the majority as having decided that, when the agent traveled to the plaintiff's home and attempted to extort sexual favors from her, he was acting within the scope of his employment. *Id*. at 953–54. Judge Bybee argued that the agent's actions "were plainly outside his regular duties," and pointed out he had been convicted of two felonies as a result of what he did: bribery, and deprivation of rights under color of law. Furthermore, Judge Bybee frankly refers to the nature of the claims as "sexual torts" and compares them to other cases arising from sexual assaults. *Id*. at 954–57.

Nor have California courts read *Xue Lu* as the government suggests. *Z.V. v. County of Riverside*, 238 Cal. App. 4th 889 (Cal. App. 4 Dist. 2015), which strongly disagreed with the majority's interpretation of *Lisa M.* and of California law more generally, summarized the opinion as holding "that the United States, as the employer of a federal immigration officer, *could* be held liable under California tort law for the officer's sexual assaults on two asylum applicants—at least insofar as the torts of intentional infliction of emotional distress and violation of right to asylum were concerned." *Z.V.* at 896 (citing *Xue Lu*, 621 F.3d at 949–50). In other words, neither the California Court of Appeals in *Z.V.* nor Judge Bybee in his dissent thought the case was about denial of asylum as the government has argued. Rather, both confirm this Court's reading of *Xue Lu*, which is that it dealt with the agent's alleged misconduct when he went to the plaintiffs' houses and committed sexual torts there.

*Xue Lu* has been criticized and rejected, *see, e.g., Z.V.*, 238 Cal. App. 4th at 902 (calling *Xue Lu*'s holding as "not persuasive [and] not accurate either as a statement of California law or as an application of it"), but not overruled. The Ninth Circuit's holdings about what California law means, however, are binding on this Court, even though they are not

binding on state courts. *See Rotec Indus., Inc. v. Mitsubishi Corp.*, 1116, 1122 n.3 (9th Cir. 2003) (holding that 3-judge panel decision of the circuit can be reversed only by an *en banc* circuit panel, the U.S. Supreme Court, or — on issues of state law — the state supreme court). In other words, *Xue Lu* remains binding on this Court.

The facts here are analogous to those in *Xue Lu*, especially those that the majority discussed and relied on. In short, the Court finds that in light of undisputed facts, *Xue Lu* compels a determination that Rico was acting within the scope of his employment at the time of the events giving rise to Plaintiffs' claims. Rico's petition for certification is **GRANTED** and the United States is **ORDERED** substituted in as the sole Defendant, in place of Rico. The Clerk is directed to update the docket to reflect this change.

Although the Court offered to certify this issue interlocutory appeal pursuant to 28 U.S.C. §1292(b) if any party requested it, no party did so. The government pointed out that it would require permission of the Solicitor General's office. The court will therefore not certify this issue for interlocutory appeal at this time. If any party wishes to renew the issue, they should do so as soon as practical.

**IT IS SO ORDERED**.

DATED: May 25, 2018

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge